May it please the Court, my name is Brad Book. I represent plaintiffs below, Chris and Lydra Cook. I'd like to reserve about three minutes, if I may, for rebuttal and I thank the Court for that. If I could leave the Court with only one thought from today's proceeding, it would be that the cause of action here below can proceed without doing any violence whatsoever to the tribal sovereign immunity doctrine, indeed without even implicating tribal sovereign immunity. That is because if one steps back and takes a look at the sovereign immunity cases as a body of law, as distinguished from a bunch of individual cases and tried to parse through them and distinguish sometimes indistinguishable facts and fact patterns from one another, there are some things that emerge from that body of law. First, that the doctrine of sovereign immunity is not an absolute concept. Second, the doctrine is not a static concept. And third, the doctrine is not intended to isolate or insulate tribes from the contemporary commercial world. Instead, the doctrine is one with a purpose. It is a specific purpose and a limited purpose. And that purpose, the category of purpose, is to assure and to preserve tribal self-governance and self-determination, to assure and preserve tribal culture and tradition and education, and to assure and preserve internal and social relations between members of the tribe. And there is nothing, I would respectfully submit to this Court, about having the tribe's liability insurance carrier provide a defense and indemnify the tribe. Kennedy, is this a direct action? Are you suing the insurer? No. Then why mention him? Because I think that is the reality of this context. We're not talking reality. We're talking about sovereign immunity, I thought. And I thought that sovereign immunity for tribes extended to their economic behavior, as opposed to, say, Foreign Sovereign Immunity Act, where we sort of invaded that concept. Are there cases to say that it includes the tribal economic corporations? I'm not sure that I understand the Court's question. Well, I'm not sure I understand your point that the whole point of it is just to protect their governance and their relations with other tribal members. I thought we pretty clearly said that it's not just governmental things as it is with We've said it also is economic things. Exactly. Exactly. So this is economic, isn't it? Counsel, I've got sort of the same question, but relating to our precedent in Allen v. Gold County Casino. So, you know, however you would want to frame concepts of sovereign immunity, as you did in your opening part of your argument, you know, how do you reconcile that with what the Court's opinion in the Allen case said? I think you're on. Doesn't our panel have to follow that precedent if it can't be fairly distinguished? So it may be wrong, but that's for an in-bank panel to say. I think that a rule can be fashioned where it is not necessary to even address a waiver of sovereign immunity or even to touch upon sovereign immunity. When a tribe is acting as a sovereign, sovereign immunity attaches. When a tribe is not acting as a sovereign, particularly when a tribal corporation is not acting as a sovereign, there is no sovereign immunity. And running a casino is not acting like a sovereign. Running a casino is not acting in the capacity of a sovereign. Running a casino is not acting in the capacity of a sovereign. How is that different from that Allen v. Gold County Casino case? I'm not sure, frankly, that it is. And that is why I say I think it is best viewed as a matter of examining all of sovereign immunity law as a body of law, rather than trying to do that. Okay, but if that's your argument, if you're not telling us a way to disregard Allen, but rather saying Allen's wrong, wouldn't we have to follow Allen, and wouldn't that be an argument that would be presented in a petition for rehearing in bank? In other words, I might agree with you in terms of my personal view on the issue, but unless I can see a reasonable way to distinguish Judge Canby's opinion in that Allen case, you know, it seems to me we have to follow it. Candidly, Your Honor, I'm not certain that I am sufficiently facile with the facts of Allen in order to answer your question with precision, but I think this. And it's the reason that I mentioned insurance. It is the fact in this case that liability insurance covers the acts of the tribal employees in this particular case. I don't believe that was the fact in Allen. What case says you don't have sovereign immunity if you buy insurance? I don't believe that there is a case. But the... Well, then we're going to create a new rule that if you have the nerve to go out and buy insurance, then you lose your sovereign immunity. That's an interesting concept, and one I don't think any case has ever held. The point, Your Honor, is that the purpose of the sovereign immunity doctrine is completely satisfied once a rule is made that, for example, a tribal corporation is civilly liable to the extent of its insurance. At that point, there is zero impact on the tribal economic position. How can you say that? They must have to pay a much smaller premium because it's very unlikely that anybody is going to collect against them. I should think that would be the least expensive insurance in the world. In fact... Do you know for a fact it's not? I don't. Well, then, so they buy some insurance because, for one thing, they get legal representation that way, presumably. So they buy some insurance. The insurance company realizing that the chance we're going to take a hit is about one in a zillion, and so we charge you a premium on that basis. So how can you say the tribe is not affected? If you were a medical doctor doing OBGYN work, you might think that you were being seriously economically affected by the height of the insurance premium in that area. I think the direct answer to Your Honor's question is found in the San Manuel case recently decided by the D.C. Circuit, which I think rather thoughtfully and thoroughly addresses the contours and the scope of sovereign immunity. And it says that you need not find that there is zero economic impact in order to find that sovereign immunity does not protect a tribal corporation in a particular situation. And I am suggesting to the Court that it is the responsibility of the courts to define and to refine the contours of sovereign immunity and to apply sovereign immunity so that it remains relevant and useful and balances all of the interests that are involved. Counsel, we're a three-judge panel of the Ninth Circuit. We must follow the law of other panels of the Ninth Circuit. Judge Canby wrote, Tribal immunity extends to business activities of the tribe, not merely to governmental activities. When a tribe establishes an entity to conduct certain activities, the entity is immune if it functions as an arm of the tribe. And that was in the case that's cited by Judge Gould earlier, Allen v. Gold Country Casino, right? Correct. Now, gather your wits and distinguish that case so that we can say there's a difference between Judge Canby's enunciated rule and the rule you wish us to adopt. I believe that in that case the evidence and the record suggested that there was a direct economic impact on the tribe from the causes of action alleged. In this particular case, there is a tribal corporation that intervenes between the plaintiff and the tribe itself, and it has the effect of absorbing, in a risk management sense, the impact, if any, there would be on the tribe itself. But the casino in this case was a corporation which was organized under the tribal law, which was owned outright by the tribe and was managed outright by the tribe, and which used all surplus capital, I believe the phrase was used, and put that in tribal treasury so that there were no minority shareholders, there were no preferred shareholders, there was no distributions to anybody but the tribe. So why isn't this casino, as was the Gold Country Casino, an arm of the tribe? Frankly, Your Honor, we didn't have an opportunity to discover that fact below. And I do not know what would have proved out in terms of the facts had our motion to permit some discovery been granted. And it may be that there is a risk management system that operates with this tribal corporation. The record shows no difference between this tribal corporation and the Gold Country Casino. True. I don't know that Well, I'm not asking whether you know it. The record in this case shows no difference. The record in this case shows no information about the operation of this tribal corporation. Well, that's not quite true. The record in this case shows that the tribal corporation is incorporated under the laws of the tribe that all surplus capital, whatever that might mean, goes to the tribe, that the income can be retained for purposes of further capital improvements, the net income. And it describes how the finances of this corporation are to benefit the tribe. So it's not quite right to say that there is no information. It's more likely that there is no information which helps you. The record contains only the articles of incorporation. Well, whose fault is that? We requested discovery on those points. And it was turned down by the court. Is that a point on appeal here? It is. Thank you. I'll reserve the rest of my time. Thank you. May it please the Court. My name is Todd Julian. I represent the Aave Casino Enterprise and the individual tribal defendants that were named as defendants in this action. This is undeniably a tragic case, but we are here dealing with the court's subject matter jurisdiction. The tribal defendants were dismissed on immunity as well as most of them were dismissed on the basis of the lack of diversity of citizenship jurisdiction. We are not here to fashion a new rule on sovereign immunity. That is not the function of this court. The United States Supreme Court has... Okay, counsel, let me just tell you. I'm concerned on the scope of sovereign immunity and I plan to follow Alan. But... And that may resolve it. So the only question I really have is whether Alan is distinguishable or not on sovereign immunity. If it's not distinguishable, then I think our panel is bound by it. However, an in-bank court or the Supreme Court can always take another look at it. So what I wanted to know is what are the limits of this sovereign immunity doctrine? So if, for example, the casino had, like a manager who demanded sexual favors of an employee and they didn't fire that person after complaints and then the casino was sued under Title VII, would there be total sovereign immunity or not? Well, to answer your question, Your Honor, I think that there is no distinction between this case and Alan v. Gold Country Casino. I think they are in terms of the formation of the operating company that is entitled to the same sovereign immunity as the tribe because it functions as an arm of the tribe. So in my hypothetical then, would you say that a tribal corporation would have sovereign immunity in the sex discrimination case that I posed? I think that the sovereign immunity applies almost across the board with certain exceptions, and there are exceptions, I believe, specifically involving Title VII and under the Indian Civil Rights Act. The restrictions on sovereign immunity are the exclusive province of Congress. And that's what the United States Supreme Court has said. If there are going to be any limitations or fashioning of other needs to come specifically from Congress. Has Congress made an exception in the case of racial discrimination? Like if a casino had a manager that just said, you know, we're firing you, Mr. X, because we don't like your race. Would they have immunity or not? I believe they would have immunity because I do not believe that is an exception that has been specifically recognized by Congress. And in fact, the Allen v. Gold Country Casino case did involve employment claims. I don't believe they were specifically discrimination claims, but that was the nature of that dispute. And... Okay, well we're going to follow Allen and if Allen's not distinguishable you're going to win on that. But you know, nothing stops an in-bank court or the Supreme Court from changing the rules. So, I wanted to know your position as to whether that immunity should be that broad. And I take it your answer is yes, it should and if there's to be any change, it has to come from Congress. I believe that's accurate to say, Your Honor. That is what the Supreme Court had said in the Kiowa Tribe case and they said there may very well be some circumstances in terms of limiting the perpetuation of sovereign immunity or curtailing it in specific instances. But we, as the courts, must defer to the specific role of Congress in making that important decision. I have a question to follow up on something that Judge Gould said. The question is is Allen distinguishable? Your learned opponent has said that Allen is distinguishable because the constitution of the Gold Country Casino in Allen as an arm of the tribe is perhaps different from the ACE, the Ivy Casino enterprise because the only thing that the plaintiff in this case could adduce as proof of the constitution of ACE was the articles of incorporation that request was made for discovery and erroneously denied by the trial court as I understood him. If that is so, if there was an erroneous denial under Rule 26 standards why shouldn't we remand this case to the district court to allow discovery and allow the plaintiff to show that the incorporation with which we're involved is different from the Gold Country Casino to the extent that it is no longer classifiable as an arm of the tribe? First of all, I don't believe that request is ever made in the federal district court action, Your Honor, or that it was denied or that it was an issue that was raised on appeal. I believe counsel might be thinking of the companion case that was filed in state court in which there was a request for jurisdictional discovery regarding personal jurisdiction which was also denied by the state court. If I'm mistaken in that regard and there was some other request for discovery in this case, I don't see how that changes the fundamental facts regarding the diversity of citizenship jurisdiction or regarding the formation of the corporation itself. I will certainly ask Mr. Book to give me a record citation as to the motion for discovery, the denial thereof, and the portions of the brief which are directed toward raising that issue as a reversible error. Pardon me for interrupting. If it goes to the core of the jurisdiction, the fundamental facts that are part of the record are the same as in Allen v. Gold Country Casino which is getting to the issue of not whether there's a risk manager or not whether they purchase liability insurance or the limits of the insurance.  the tribal corporation function as an arm of the tribe? Are they wholly owned and operated by the tribe? And that is something that I believe is still undisputed in the record. Counsel, Judge Gold with a question. Could you refresh my memory whether the briefing in this case predated Allen or whether it followed Allen? I believe the briefing in this case predated Allen. Allen was decided in 2006 and I believe it was included as part of the record in a supplemental citation of authorities. That was my impression that the main briefs did not address it. Judge Rosenblatt addressed it. Pardon me? Judge Rosenblatt addressed Allen in the district court. Yes, Your Honor, and I misspoke there because I was thinking of the briefing at the district court level because it was in a supplemental citation to the district court which was relied upon by Judge Rosenblatt and it is cited in our appellate answering brief. Counsel, I take it there's no requirement of exhausting remedies in the tribal court before coming in here with this action? I think you're correct in that respect, Your Honor. That is something, at least an issue that was never raised or considered by the district court in this action and it's not an issue on appeal. How about the sue and be sued? There's a sue and be sued clause in the charter, right? Not exactly, Your Honor. What you're referring to is the tribal business code which does contain a sue and be sued clause as part of the tribal business ordinances. But this case is distinguishable from some of the charters that you're familiar with, of course, involving housing authorities where a sue and be sued clause is included specifically as part of the corporation's charter and which in some cases, including those from this district at least, have been found to be a waiver of immunity. This case is different. First of all, the plaintiffs, as pointed out by Judge Rosenblatt in footnote 7 of his August 26th minute entry dismissing the case, the plaintiff has never raised the issue of a waiver of immunity under any circumstances or any theory. It's not raised below. It's not raised on appeal. In fact, I don't think they've ever even used the word waiver in any of their moving papers. But to address your question more specifically, Judge Gould, we know that in this case, the business ordinance allows the creation of different types of corporations. They allow the creation of wholly owned corporations such as the Avi Casino Enterprise in which all the stock is vested and held by the tribal council for the benefit of the tribe. It also allows the formation of other commercial corporations where they issue stock. The Avi Casino Enterprise itself we know is wholly owned and operated and they did not waive their immunity as part of their articles or as part of their bylaws and we know that because in the bylaws it specifically includes a provision stating that this corporation retains its sovereign immunity unless expressly waived or limited by a signed contract or agreement. So it is a little bit different from the circumstances where we have a section 17 federal commercial corporation established for a housing authority or even when a tribal entity establishes a corporation for purposes of operating a housing authority incorporating that language approved by HUD and by Congress. Your Honor, I'd like to quickly move on to the issue of the diversity of citizenship jurisdiction as well. This was really the initial basis for the Court's denial or granting of the motion to dismiss including two of the original individual plaintiffs that the defendants that the plaintiffs had inadvertently named and then Judge Rosenblatt requested supplemental briefing on this issue of what is the citizenship of the Avi Casino Enterprise citing to the Stockwest case from this Court and specifically raising the question of what is the citizenship of a tribal corporation? In the Stockwest we know the language was well for purposes of diversity of citizenship we can look to the location of where the reservation is located. And the Court directed the counsel to brief this because the Fort Mojave Indian Reservation spans three different states including California. So we did brief that issue but the plaintiffs completely ignored that question of the situs of the location and completely ignored the question of the dual citizenship of the corporation and focused exclusively on the undisputed question of the principal place of business being on the reservation in the State of Nevada. Section 1331 says that the citizenship of a corporation can be in two places. One, the State of its incorporation and two, its principal office of business. Right? Principal office of business here is Nevada. Right? Yes. Of AVE. For purposes of citizenship. And there is no State of incorporation because the corporation was not incorporated by a State. It was incorporated by a tribal a tribe which is similar to a sovereign country. It's a little bit like saying that if I were to go down here to Sutter Street to the Spanish Consulate and incorporate a Spanish corporation under Spanish law that all of a sudden it becomes a California corporation because it was incorporated physically in an office in California. There is no State incorporation. A corporation is only a body that comes into being when it's done by a State. This corporation came into being without the aid of any, without the aid of the California Corporation Commissioner for sure. Right? Why isn't there diversity of citizenship? By the same token, Your Honor, the principal place of business is not in any State either. It is on the reservation. So if we're looking at, under these circumstances for purposes of diversity only, we recognize that in most circumstances the... We can treat the tribe as a foreigner. And a foreigner you can sue under diversity of citizenship, can't you? In fact, an Indian tribe has no citizenship at all. So you cannot sue the Indian tribe because they are not a citizen of any State. Well, they can be a subject of some entity, right? I mean, there's diversity of citizenship if a Californian sues a Spaniard, right? I believe they are actually quite distinct, and that's why we have this issue that has come up regarding how do we determine diversity. And in that case, we are to treat a tribal corporation the same as a domestic corporation. We look at the part of the reservation where the principal place of business is, and we look at the part of the reservation where it was incorporated. But it wasn't incorporated by a State. So we have to say that if an entity which is not a State incorporates a corporation, we take citizenship, which the tribe is not a citizen, and we attribute it because of the location of the principal area where the tribe operates. Do we have a case that says that? I agree with you, Your Honor, that it doesn't fit with any mold. For purposes of diversity, we need to either look at where the reservation lies, which destroys diversity. We use that as a bright line rule. Or we treat the corporation as a foreign corporation, like a Canadian corporation. I don't think any of the Federal cases that have interpreted that have gone that far, Your Honor. Stockwest said that it's a citizen, a tribal corporation, it's a citizen of the State in which the tribe resides, right? We know that. We said that. True? Yes. For purposes of diversity, where the reservation is, which in this case, if you apply that literally, it destroys diversity. If we apply it literally, then there's no diversity, right? Because the tribe resides in California, among other places. Correct. So what the district judge was wrestling with is when you given that, that doesn't seem to fit very well, what analogy can we use? And so we use the analogy of the place of incorporation, even though that's not technically accurate any more than principal place of business is accurate. Yes, I think that's correct. And I think we also follow some of the Federal case law that says a tribal corporation is to be considered the same as a domestic corporation for purposes of determining the diversity, in which case we look at the dual citizenship, and the most logical thing to do is to look at where and how it is incorporated. Why does diversity even matter if it has sovereign immunity? It's another basis for relief, Your Honor. And for that matter, I would point out, as my time has expired, that we also have cross-issues for appeal that have not been addressed and remain unopposed by the plaintiffs. Well, don't we have to deal with diversity first if we are dealing with jurisdiction before we deal with sovereign immunity, which, after all, is not the same kind of jurisdiction as diversity, because sovereign immunity can be waived and diversity jurisdiction cannot be altered by the parties. So we have to deal with diversity. That's true. They both are a matter of subject matter jurisdiction. That is the manner in which the district court had addressed these issues and ruled upon these issues, but also finding on the basis of immunity. Thank you. Have you found the citation to your motion for discovery? I have not, Your Honor. And three points on rebuttal. First, with respect to the sequence vis-a-vis Allen, the events in this case occurred in 2003. The motion to dismiss was filed and briefed in 2006. Allen was decided thereafter, and then the district court decided this case after Allen had been decided. With respect to the diversity issue, Your Honor, it seems to me that you are exactly right. Avi Casino Enterprise, factually and analytically, is a citizen of Nevada and only of Nevada. The legal proposition that a corporation can have dual citizenship does not mean that a corporation must have dual citizenship or that a corporation always has dual citizenship. Factually, in the record here, if you look at the documents and we're relying solely on the articles of incorporation, the articles of incorporation expressly state that the registered office of the corporation is in Nevada. What does registered office mean? What does registered mean? Registered with whom? Apparently, it means registered with the tribal offices. Apparently. Is there anything in the record or in the statutes which defines the term registered and tells us what is its significance? I don't believe so, Your Honor. It appears only by the terms of the articles of incorporation that were drafted by the Hobby Casino Enterprise, Inc., itself. One thing that is certain is that the document appears to have been notarized and signed in Arizona. The word California does not appear anywhere, is not mentioned in any fashion whatsoever. And I think it is undisputed that all of the business of the corporation occurred in Nevada. So the only argument for dual citizenship is the two-step argument that the tribal corporation is organized under tribal law and the tribal law is somehow a citizen of California because it has an office in California, although there is no evidence in the record that the tribal office is located in California and the tribal corporation office is clearly in Nevada as designated in the articles of incorporation. So the tribe is trying to claim that it is a citizen of California for a procedural purpose, but it doesn't want to be a citizen for any other substantive purpose. And I think clearly Nevada is the principal place of business here, and it is the only place of citizenship of the corporation. I thank you. Thank you very much, Mr. Brooke. Thank you, counsel. And this case will be submitted, Cook v. Avey Casino, submitted as of today. And that concludes our calendar, and we will adjourn until tomorrow morning at 9.30. Thank you very much. Thank you. All rise. Ms. Corkman, the session is standing adjourned. Thank you.
judges: Fernandez, Gould, Bea